**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HANY F. KOULTA,                                        Case No.  04-40343
Personal Respresentative of the
Estate of Sami F. Koulta,

                                                       HON.  PAUL V. GADOLA
        Plaintiff,                                     U.S. DISTRICT JUDGE

        v.                                             HON. R. STEVEN WHALEN
                                                       U.S MAGISTRATE JUDGE
CITY OF CENTERLINE,
OFFICER DANIEL MERCIEZ,
OFFICER ROBERT WROBLEWSKI
and OFFICER STEVEN HILLA,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

        Plaintiff Hany F. Koulta, acting as Personal Respresentative of the estate of Sami

F. Koulta, has filed a civil rights action under 42 U.S.C. §§ 1983 and 1988, naming the  City

of Centerline, Officer Daniel Merciez,  Officer Robert Wroblewski and Officer Steven Hilla

as Defendants.[1]  Before the Court is a Motion to Dismiss for Judgment on the Pleadings, or,

in the Alternative, for Motion for Summary Judgment Pursuant to  Fed.R.Civ.P.56. or

_____

        [1]On December 7, 2004, the Honorable Paul V. Gadola dismissed Counts three though
five of the complaint, declining to exercise supplemental jurisdiction over Plaintiff's state
law claims (Docket #2).

-1-

12(b)(6), filed June 20, 2005 (Docket #14) by Defendants Merciez, Wroblewski, and Hilla. The matter has been referred for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that the motion  be DENIED as to Defendants Merciez, Wroblewski, and Hilla.

## I.  BACKGROUND FACTS

In  the  early  hours  of  September  13,  2002,  the  Centerline,  Michigan  Police Department received a call from a resident homeowner, Francis Offrink, reporting that "an unwanted person" was at her home. *Complaint* at ¶ 9.  Defendant Merciez arrived sometime between 2:15 and 2:20 a.m., followed by Defendants Wroblewski and Hilla, who arrived in a separate patrol car. *Id*. at ¶ 10.  After Defendant Merciez questioned the homeowner and the  "unwanted person,"  Chrissy Lynn Lucero,  Defendants ordered Lucero to leave the premises at approximately 2:25-2:30 a.m. *Id*. at 13.  None of the Defendants administered a preliminary breath test to Lucero, determined whether she held a valid driver's license, or possessed any outstanding felony arrest warrants. *Id*.  In response to the officers' directions to depart, she left the premises by automobile.  Within twelve minutes, Lucero, having driven from Centerline into an adjacent city, broadsided the vehicle of Sami Koulta, killing him instantly.  *Id.* at 14.  Lieutenant Bruce Hamel of the Sterling Heights Police Department arrived at the scene within moments of the accident, noting that Lucero smelled strongly of alcohol. *Id*. at Exhibit 2, *Testimony of Bruce Hamel* at pgs. 45-48.  Observing that Lucero also exhibited slurred speech, red, and watery eyes, and had urinated on herself, he testified that he determined "within a couple minutes" that she was intoxicated.  *Id*. at Exhibit 2,  pgs

46, 48, 49.  He reported that upon his arrival, a number of bystanders at the accident scene were surrounding Lucero, haranguing her for killing Koulta.  *Id*. at pg. 45.  He testified that Lucero, distraught, stated repeatedly that the Defendant police officers "made" her drive despite the fact that she knew she was "too drunk to drive."  *Id*. at pg. 50.

Lucero subsequently pleaded guilty to second degree murder.  Plaintiff filed a civil action against Lucero in Macomb County Circuit Court (*Koulta v. Lucero,* Case no. 03-003413-ND).  On May 23, 2005, Circuit Court Judge Richard L. Caretti issued a judgment against Defendants, Chrissy Lynn Lucero and Ann Marie Lucero (Lucero's grandmother and the owner of the car in question) jointly and severally for Seven Hundred Fifty Thousand ($750,000) in connection with the death of Sami Koulta.  *Motion to Dismiss* at Exhibit C.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state  a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to

-3-

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the

non-moving party must show sufficient evidence to create a genuine issue of material fact.

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  A mere scintilla of

evidence is insufficient; "there must be evidence on which the jury could reasonably find for

the [non-moving party]."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against

a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III.  ANALYSIS

#### A.  Judicial **Estoppel**

Defendants argue that the May, 2005 Macomb County Circuit Court judgment that

found Lucero liable for damages of $750,000 in the wrongful death of Koulta precludes the

present action against the defendant officers, pursuant to the doctrine of judicial estoppel.

*Motion to Dismiss* at 13.   Citing *Paschke v. Retool Industries*, 445 Mich. 502, 509-510; 519

N.W. 2d 441 (1994) and *Warda v. C.I.R.*, 15 F. 3d 533, 538 (6th Cir. 1994), they maintain that

Plaintiff's present claim of constitutional violations impermissibly states a position

inconsistent with the one used  against Lucero in the state action.   Defendants state that

Plaintiff "successfully and unequivocally asserted . . . that Ms. Lucero's negligent acts were

-4-

the sole cause of Plaintiff's injury," arguing that the favorable state judgment prevents her suit against them. *Motion to Dismiss* at 14.

The doctrine of judicial estoppel "operates to prevent a party who has successfully maintained a certain position in one proceeding from asserting a contrary position in another proceeding." *Blanton v. INCO Alloys Intern, INC.*, 108 F.3d 104, 108 (6th Cir. 1997). Whether to apply the doctrine of judicial estoppel falls within the sound discretion of the Court. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 617 (3d Cir. 1996).

Defendants' argument for dismissal on the basis of judicial estoppel fails for a number of reasons. Defendants cite *Warda v. C.I.R. supra*, to support their argument that privity is not required to bar suit on the basis of judicial estoppel. However, the Sixth Circuit's holding actually turned on its finding that plaintiff's previous statement to a probate court that she owned a parcel of land stood diametrically opposed to her later position in the federal court attempt to stave off a lien by the Internal Revenue Service by claiming that her son, rather than she, owned the land in question. In contrast, Plaintiff's present position that the Defendant police officers were deliberately indifferent to Koulta's constitutional rights is in no way inconsistent with the state court judgment against Lucero for negligence. Plaintiff's allegations in the state action comport with the present claims. The state court complaint, which does not name the present Defendants, alleges nonetheless that the "Centerline Police Department allowed . . . Lucero to continue to drive" although she was legally intoxicated and did not hold a valid driver's license at the time of her encounter with the officers. *Motion to Dismiss* at Exhibit G, ¶¶ 9-11.

-5-

Defendants reliance on *Paschke v. Retool Industries, supra*, in arguing that Plaintiff's success in the state court suit estops the federal action, is also unavailing. *Paschke* states that in addition to success in the earlier proceeding, "in order for the doctrine of judicial estoppel to apply, *the claims must be wholly inconsistent*." *Id.* at 509. Defendants' motion fails to establish that Plaintiff's negligence claims against Lucero in state court are inconsistent with the theory that Defendants violated Koulta's civil rights.

In addition, Defendants' *Motion to Dismiss*, which includes the two-page state court judgment against Lucero (Exhibit C), does not include the court's factual or legal basis for its finding. This Court cannot assume, based on the very limited information provided by Defendants, that the state court findings contradict Plaintiff's present position that Defendants showed deliberate indifference by failing to detain Lucero.

Moreover, Plaintiff, citing MCR 1.11(A)(2), notes that its state action position that Lucero was "a" or one proximate cause of Koulta's death "does not preclude this court from a finding in the instant action that the Defendants herein were 'the one most immediate, efficient and direct cause' of Koulta's death." *Response* at 14. In addition, the state court's determination does not vindicate Plaintiff's claim in the present case, which unlike the state claim against Lucero, alleges a deprivation of constitutional rights.[2]

_____

[2] A supplemental response brief, filed on February 2, 2006 [Docket #45] indicates that the state court judge recently granted present Defendants' Motion for Summary Judgment as to violations of the Michigan Constitution, but denied the motion as to negligence and gross negligence, standing at odds with Defendants' argument that the court's earlier finding that Lucero was a proximate cause of Koulta's death estopped this Court from finding liability for Defendants. *Id.* at Exhibits A, B.

### B.  Qualified Immunity

Defendants argue that they are immune from suit on the basis of qualified immunity. *Motion to Dismiss* at 5.  Citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6ᵗʰ Cir. 1998), Defendants maintain that their actions on the night of Koulta's death were not "objectively unreasonable." *Sova,* at 902-903.  Defendants argue further that their failure to prevent Lucero from driving while intoxicated did not violate a  clearly established constitutional right.[3]  *Motion to Dismiss* at 3. Citing *Green v. Greeves*, 80 F.3d 1101, 1104 (6ᵗʰ Cir. 1996), Defendants  maintain that the "[c]ontours of  Koulta's rights were not "sufficiently clear that a reasonable official would understand what he is doing violates that right."  Further, citing  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L.Ed.2d 249 (1989), Defendants contend that their mere "failure to protect"  Koulta  from Lucero's actions "does not constitute a violation of the Due Process Clause."  Defendants' Brief at 7.

Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.  In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6ᵗʰ Cir. 2002), the Sixth

---

[3]According to testimony taken at the preliminary examination in the criminal proceedings, Lucero claimed at the scene of the accident that she had been affirmatively directed by Defendants to leave the Centerline location.  *Motion to Dismiss*, Exhibit A, *Preliminary Examination* at pgs. 50, 59.

Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

### 1.   Constitutional Violation

In  *Schroder v. City of Fort Thomas,* 412 F.3d  724, 730 (6th Cir. 2005)(internal citations omitted), the court found that  "where a plaintiff claims that a non-custodial substantive due process violation has occurred because of the government's deliberate indifference, something more must be shown--a something that we have variously described as callous disregard for the risk of injury  or action in an arbitrary manner that shocks the conscience or that indicates an intent to injure." The court added that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.*; *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

As a matter of law, considering the facts in the light most favorable to Plaintiff, allowing, encouraging, or ordering  Lucero to drive while intoxicated amounts to a "state-created danger" which resulted in a substantive due process violation.[4]  The Second Circuit

---

[4]A Lieutenant from the Sterling Heights Police Department testified that Lucero stated that Defendants ordered her to drive, despite her protestations. *Complaint* at Exhibit 2, *Testimony of Bruce Hamel* at pg. 50.  Francis Offrink also testified that Lucero told one of the Defendant officers that she was too drunk to drive. *Plaintiff's Supplemental Exhibit List,* [Docket # 31] at Exhibit 3.

-8-

in *Pena v. DePrisco,* --- F.3d ---,  2005 WL 3340380 (2nd Cir. 2005) observed that "in various courts the term 'state created danger' can refer to a wide range of disparate fact patterns. For example, courts have used the 'state created danger' label to describe the state's duty to protect a person from private violence when the state itself has placed that person at risk." Citing *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) (Posner, J.), the *Pena* court found that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."  Likewise, in  *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993), the court found that  where "defendants removed a driver, who it must be inferred was sober, and left behind a passenger, whom they knew to be drunk, with the car keys," Plaintiff had stated a sufficient basis for   "a claim for deprivation of constitutional rights under 42 U.S.C. § 1983."  The  *Reed* court supported its holding with the premise that "[w]hile we do not seek to expand any existing duties for police officers, we do suggest that officers may be subject to suit under section 1983 if they *knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger*." *Id.* (emphasis added).

In the present case, Plaintiff alleges the creation (or escalation) of a situation by Defendants which surpasses the level of indifference demonstrated in *Reed*.  Although Defendant Merciez testified that at one point he stood within three feet of Lucero and that she did not appear or smell intoxicated (*Motion to Dismiss* at Exhibit A, *Testimony of Daniel Merciez* at pg. 18),  Plaintiff has presented a law enforcement officer's testimony that within

-9-

minutes of Lucero's dispatch by Defendants, she exhibited obvious signs of intoxication. *Complaint* at Exhibit 2, *Testimony of Bruce Hamel*, pgs 46, 48, 49.   His testimony is corroborated by another Sterling Heights police officer.  *Motion to Dismiss* at Exhibit A, *Testimony of Walter Garon* at pg. 88.    Defendant Merciez testified that upon his arrival at the home of Lucero's former boyfriend, after noting that Lucero's car stood in the driveway, he called police dispatch to run a lien check on the license plates.  He can then scarcely deny that when he ordered Lucero (an individual whom other witnesses deemed obviously intoxicated and smelling of alcohol)  from the premises approximately five minutes later, that he did not anticipate that she would leave by car.  *Id*. at pg. 22.[5]  Further, directly following the fatal car crash, Lucero told bystanders that Defendants forced her to leave the premises by car.  *Complaint* at Exhibit 2, *Testimony of Bruce Hamel* at pg. 50. Lucero testified in deposition that one of the Defendants, after leaving the scene, returned after discovering that she had not driven away as ordered:

> "He [Defendant] just told me that I had to go, move on, get over it.  I got in my car, sat there.  I was just sitting there crying and he – both of them left, one took off one way and the one took off another way.  The next thing I know the guy comes down and does a U-turn and he comes down and says [']What is the hold up, you have 10 seconds to get out of here[']  and I am like [']Oh, shit['] and so I left."

---

[5]Defendant Merciez's incident report states that "Lucero spoke to me in a very clear manner.  Lucero stated she understood that she was unwanted and agreed to leave.  There was no indications that Chrissy Lucero had been drinking at the time of the call (i.e.: alcohol on her person)."  *Motion to Dismiss at* Exhibit D.  However Merciez conceded that he wrote the incident report at eight o'clock the next morning, *after* being informed by his supervisor that Lucero had been involved in a fatal automobile accident.  *Id*. at Exhibit A, *Testimony of Daniel Merciez* at pg. 35.

*Deposition of Chrissy Lucero* at pg. 60

Defendants rely on *Saenz v. Heldenfels Bros., Inc*. 183 F.3d 389 (5th Cir. 1999), in which the court found that an officer's failure to detain a habitual drunken driver who struck and killed another motorist minutes later did not violate the deceased's constitutional rights. *Id*. at 390.  However, *Saenz*, is distinguishable from the present case.  Saenz premised its cause of action on the officer  "refrain[ing] from arresting a suspected drunk driver," *(Id.* at 391) whereas in the present case, Lucero testified Defendants *ordered* her to drive from the premises even after they had been informed that she was too drunk to drive.    Likewise, *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003), in which defendant officers transported an individual from an isolated and presumably dangerous area to a well-lighted street corner where he was later struck and killed by a truck is inapplicable to the instant scenario.  As noted by the Sixth Circuit, the defendant officers could not have reasonably believed that their acts would place the decedent in greater danger:

> "Defendant officers took plaintiff from a place of great danger: the shoulder of a dark, foggy, two-lane highway. They placed him in a place of lesser danger: the parking lot of an open convenience store, where telephones, restrooms, and food and drink were available to him."

 *Cartwright*  336 F.3d at 493 (6th Cir. 2003).  Ordering an obviously drunken individual into her car and commanding her to drive alleges a foreseeable and conscious-shocking menace far greater than the inactivity of the *Saenz* officers and the good faith efforts of the *Cartwright* defendants.

-11-

## 2.  A Clearly Established Right

The facts presented do not merely allege a constitutional violation, but pursuant to *Saucier* and *Higgason, supra,* indicate that Koulta's rights were clearly established at the time of his death.  While Defendants cite *Brosseau v. Haugen,* 543 U.S. 194,  125 S.Ct. 596, 598-599 (2004) to support their contention that the "contours" of Koulta's rights were not clearly established, *Brosseau* actually states that  "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is *whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.*" *Brosseau*, 543 U.S. at 199; 125 S.C. at 599 ( 2004) (emphasis added).

Aside from the Seventh Circuit's holding in *Reed, supra,*  which found constitutional violations in similar, yet less egregious circumstances, the Eleventh Circuit in  *Marsh v. Butler County, Alabama*, 268 F.3d 1014,1032 (11th Cir. 2001), observed that "preexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specified circumstances ." Further, "[S]ome conduct is so obviously contrary to constitutional norms that even in the absence of case law, the defense of qualified immunity does not apply." *Hammond* at 1284; *quoting Scrtich v. Thornton,* 280 F.3d 1295, 1305 (11th Circuit 2002). In *United States v. Lanier,* 520 U.S. 259; 117 S. Ct. 1219; 137 L. Ed. 2d 432 (1997), the Court commented that "[t]he easiest cases don't even arise. There has never been a section

1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages or criminal liability." *Id*. at 271, 1227, 448 (*internal citations omitted*).  Likewise, Defendants, whose jobs in large part involve administering citations for failure to comply with traffic laws, cannot claim that ordering an obviously drunken woman to leave the premises by driving away in her automobile demonstrates anything but objectively unreasonable behavior.

Having found that Plaintiff has alleged that Defendants' actions led to a state-created danger, I find for the same reasons as those set forth above that a genuine issue of material fact remains as to whether Defendants were a proximate cause of Koulta's death.  While the facts at hand do not guarantee that Plaintiff will prevail at trial, he has presented evidence - most particularly, witness testimony - which demonstrates that Defendants are not entitled to a judgment as a matter of law.

## IV.  CONCLUSION

I therefore recommend that  the Motion for Dismissal or in the Alternative for Summary Judgment ( Docket No. 14) be DENIED as to Defendants Merciez, Wroblewski, and Hilla.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v*

-13-

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 16, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 16, 2006.

S/Gina Wilson
Judicial Assistant

-14-