**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HANY F. KOULTA,　　　　　　　　　　　　Case No. 04-40343
Personal Respresentative of the
Estate of Sami F. Koulta,
　　　　　　　　　　　　　　　　　　　　HON. PAUL V. GADOLA
　　　Plaintiff,　　　　　　　　　　　　U.S. DISTRICT JUDGE

　　　v.　　　　　　　　　　　　　　　　HON. R. STEVEN WHALEN
　　　　　　　　　　　　　　　　　　　　U.S MAGISTRATE JUDGE
CITY OF CENTERLINE,
OFFICER DANIEL MERCIEZ,
OFFICER ROBERT WROBLEWSKI
and OFFICER STEVEN HILLA,

　　　Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Hany F. Koulta, acting as Personal Respresentative of the estate of Sami F. Koulta, has filed a civil rights action under 42 U.S.C. §§ 1983 and 1988, naming the City of Centerline, Officer Daniel Merciez, Officer Robert Wroblewski and Officer Steven Hilla as Defendants.[1] On March 31, 2006, the district court adopted this Court's recommendation to deny Defendants Merciez, Wroblewski and, Hilla's motion for summary judgment

---

[1] On December 7, 2004, the Honorable Paul V. Gadola dismissed Counts three though five of the complaint, declining to exercise supplemental jurisdiction over Plaintiff's state law claims (Docket #2).

[Docket #53].

Now before the Court is a motion for summary judgment under Fed. R. Civ. P. 56, filed November 30, 2005 [Docket #39] by Defendant City of Centerline. The matter has been referred for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED.

## I. BACKGROUND FACTS[2]

In the early hours of September 13, 2002, the Centerline, Michigan Police Department received a call from a resident homeowner, Francis Offrink, reporting that "an unwanted person" was at her home. *Complaint* at ¶ 9. Defendant Merciez arrived sometime between 2:15 and 2:20 a.m., followed by Defendants Wroblewski and Hilla, who arrived in a separate patrol car. *Id*. at ¶ 10. After Defendant Merciez questioned the homeowner and the "unwanted person," Chrissy Lynn Lucero, Defendants ordered Lucero to leave the premises at approximately 2:25-2:30 a.m. *Id*. at 13. None of the Defendants administered a preliminary breath test to Lucero, determined whether she held a valid driver's license, or possessed any outstanding felony arrest warrants. *Id*. In response to the officers' directions to depart, she left the premises by automobile. Within twelve minutes, Lucero, having driven from Centerline into an adjacent city, broadsided the vehicle of Sami Koulta, killing him instantly. *Id.* at 14. Lieutenant Bruce Hamel of the Sterling Heights Police Department arrived at the scene within moments of the accident, noting that Lucero smelled strongly of

---

[2]The factual section of this Report is virtually identical to the one found in Docket #47.

alcohol. *Id*. at Exhibit 2, *Testimony of Bruce Hamel* at pgs. 45-48.  Observing that Lucero also exhibited slurred speech, red, and watery eyes, and had urinated on herself, he testified that he determined "within a couple minutes" that she was intoxicated.  *Id*. at Exhibit 2,  pgs 46, 48, 49.  He reported that upon his arrival, a number of bystanders at the accident scene were surrounding Lucero, haranguing her for killing Koulta.  *Id*. at pg. 45.  He testified that Lucero, distraught, stated repeatedly that the Defendant police officers "made" her drive despite the fact that she knew she was "too drunk to drive."  *Id*. at pg. 50.[3]

Lucero subsequently pleaded guilty to second degree murder.  Plaintiff filed a civil action against Lucero in Macomb County Circuit Court (*Koulta v. Lucero,* Case no. 03-003413-ND).  On May 23, 2005, Circuit Court Judge Richard L. Caretti issued a judgment against  Chrissy Lynn Lucero and Ann Marie Lucero (Lucero's grandmother and the owner of the car in question) jointly and severally for Seven Hundred Fifty Thousand ($750,000) in connection with the death of Sami Koulta.  *Motion to Dismiss* [Docket #14] at Exhibit C.

## II.  STANDARD OF REVIEW

---

[3]Defendant Merciez's incident report states that "Lucero spoke to me in a very clear manner.  Lucero stated she understood that she was unwanted and agreed to leave.  There was no indications that Chrissy Lucero had been drinking at the time of the call (i.e.: alcohol on her person)."  Docket #29 at Exhibit D.  However Merciez conceded that he wrote the incident report at eight o'clock the next morning,  *after* being informed by his supervisor that Lucero had been involved in a fatal automobile accident.  *Id*. at Exhibit A, *Testimony of Daniel Merciez* at pg. 35.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. ANALYSIS[4]

**Municipal Liability**

Defendant Centerline argues that Plaintiff's claims are subject to dismissal pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 685, 690-691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Defendant maintains first that Plaintiff has failed

---

[4] The Defendant also submits that Plaintiff's claim is barred by judicial estoppel, an argument previously rejected by the district court in its order denying summary judgment to Merciez, Wroblewski and Hilla [Docket #47, 53]. For that reason and because the claim against the City is dismissible on alternate grounds, the Court need not discuss it.

to allege the deprivation of a constitutional right, and second, even assuming the existence of a deprivation, a causal link cannot be established between the alleged violation and a Defendant Centerline's custom, usage, or official policy. *Id.*; *see also City of Canton, Ohio v. Harris*, 498 U.S. 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In *Monell*, the Supreme Court held that under § 1983, municipal liability is not unlimited, and that a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691, 2036. (Emphasis in original). However, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id* at 638, 2037-2038. In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter."

Nevertheless, a municipal policy need not be formal or written to bring § 1983 into play. It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted). In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts

to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Further, in *Memphis, Tennessee Area Local, American Postal Workers Union*, 361 F.3d 898, 902-903 (6th Cir. 2004) the court found that "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *See also Fletcher v. O'Donnell*, 867 F.2d 791,792-794 (3rd Cir. 1989). If it is shown that the city "knew or reasonably should have known" that the actions of its police officers were unlawful, this would support a claim that the city was "deliberately indifferent" to the rights of Plaintiffs, which in turn "can be properly thought of as a city policy or custom that is actionable under § 1983." *Memphis* at 904.

Contrary to Defendant's contention that no constitutional violation occurred, the district court has found that a question of material fact remains as to whether actions by the three individual police officers amounted to the rare instance in which a state-created danger resulted in a substantive due process violation. *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). However, pursuant to *Monell*, Plaintiff has failed to demonstrate that the officers' actions *were the result* of the Defendant City's custom or policy - written or unwritten.

First, the record shows that Defendant has provided the individual officers with extensive ongoing training between the beginning of 2002 to the end of 2004.[5] Although

---

[5] During this period Officers Hilla and Merciez attended 42 different courses in police training; Officer Wroblewski attended 19. *Reply* [Docket #46], Exhibits A, B, C.

Plaintiff faults the City of Centerline for failing to enroll Officer Merciez in a "Sustained Driving Impaired Enforcement" course, I note that same Defendant attended an eight-hour course entitled "Breathalyzer Level III" four months before the incident in question, training which presumably included instruction in administering the test to intoxicated individuals. The fact that Merciez did not breathalyze Lucero (who told Defendants repeatedly that she was drunk) cannot be imputed to a lack of adequate training.

Further, a February, 2006 affidavit by Timothy Woelkers, Director of Centerline's Department of Public Safety indicates that none of the three Defendant Officers have been sued for work performed in the line of duty. *Reply* [Docket #46-6] Exhibit D at ¶9. While Woelkers' statement does not exculpate the individual Officers, it lends further credence to the City's position that its failure to train was not the "moving force" behind the Officers' conduct. Likewise, the fact that the officers had otherwise never defended a lawsuit supports the City's contention that it did not acquiesce to activity resulting in a constitutional violation. *Memphis, Tennessee Area Local, American Postal Workers Union*, *supra*, 361 F.3d at 902-903.

### IV. CONCLUSION

I therefore recommend that Defendant City of Centerline's Motion for Summary Judgment [Docket #39] be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 24, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 24, 2006.

s/Susan Jefferson
Case Manager

-9-

s/Susan Jefferson
Case Manager